UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

MICHAEL D. HARDEN                          )
                                           )
                    Plaintiff,             )
                                           )
           v.                              )          No. 1:12 CV 24 DDN
                                           )
MICHAEL J. ASTRUE,                         )
Commissioner of Social Security,           )
                                           )
                    Defendant.             )

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Michael D. Harden for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and for supplemental security income under Title XVI of that Act, 42 U.S.C. § 1381, et seq.  The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Doc. 9.)  For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## I.  BACKGROUND

Plaintiff Michael D. Harden, who was born on August 8, 1974, filed applications for Title II and Title XVI benefits on June 2, 2009.[1]  (Tr. 113-17.)  He alleged an onset date of disability of May 28, 2009, due to depression, bipolar disorder, and back pain.  (Tr. 143.)  Plaintiff's applications were initially denied on August 10, 2009, and he requested a hearing before an ALJ.  (Tr. 51-57, 105.)

On January 21, 2011, following a hearing, the ALJ found plaintiff was not disabled.  (Tr. 10-16.)  On December 9, 2011, the Appeals Council denied plaintiff's request for review.  (Tr. 1-3.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

---

[1] As discussed below, plaintiff filed prior applications for disability benefits under the Social Security Act.  (Tr. 11.)

## II.  MEDICAL HISTORY

On May 5, 2007, plaintiff underwent a consultative psychological examination conducted by John Keough, M.A., a licensed psychologist.  During this interview, plaintiff stated he was disabled because, "I'm bipolar, I got depression, back problems, and I don't know."  He was depressed at a level of 9 or 10, on a scale of 1 to 10, and he was sometimes suicidal.  He believed everyone was against him, and reported suffering from depression since childhood.  He reported having severe authority figure problems with police.  Plaintiff reported first having mental health treatment at age thirteen, and he received counseling bi-weekly.  He reported being mentally and physically abused by his stepfather, and he had not seen his biological father since age two.  He was kicked out of school in the eighth grade because he always fought and got into trouble, and he did not get his GED.  He was first employed at age thirteen, and the last year he worked was 2006.  His employment history was varied, mostly hard labor, with the longest time on any one job being about three or four months.  He has been married twice to the same woman.  The first marriage produced two children, both of whom were adopted out, and no children came of the second marriage.  He had no social life or hobbies, and had been drinking since age fourteen.  At age fifteen, he started using street drugs including: marijuana, crack, crank, meth, ice, and cocaine.  He stated he had been clean for three years, and had never been involved in drug or alcohol treatment.  (Tr. 193.)

Plaintiff stated he first started smoking at the age of twelve, and he smoked about two packs a day.  He had spent sixty hours in the county jail because at age thirteen he was an accessory to a theft.  Regarding his physical well-being, plaintiff stated, "my back is killing me, my blood pressure stays high and my sugar is high."  (Tr. 194.)

Mr. Keough noted plaintiff failed to take responsibility for his actions.  Further, Mr. Keough observed that during the interview plaintiff malingered at times.  Plaintiff had no difficulty following the context of the interview, though at times he acted like he could not.  Plaintiff had no difficulty understanding and following simple instructions.  He denied any hearing impairments, but halfway through the interview he stated he could not hear, and asked Mr. Keough to look at him directly so he could read lips.  At times, Mr. Keough lowered his head

to speak and plaintiff could hear him.  Mr. Keough noted plaintiff obviously tried to portray an image other than his own, and interacted in a superficial manner.  (Tr. 194.)  Plaintiff's affective responses were highly inconsistent with the manner in which he stated he felt, in that he did not present himself as one experiencing severe depression or anxiety.  Mr. Keough stated plaintiff did not appear to be experiencing severe depression or anxiety.  Plaintiff portrayed a moderate level of impairment with regard to his ability to sustain concentration, to be persistent at tasks, and maintain an adequate pace in productive activity.  Similarly, plaintiff's ability to understand and remember simple instructions on a sustained basis was unimpaired with regard to psychological issues, as long as he refrained from using alcohol or other street drugs.  (Tr. 194-95.)

Mr. Keough further noted plaintiff's ability to adapt to the environment of others, adjust to changes in routine, and interact appropriately in social situations.  He appeared to be moderately limited by personality deficits and a long history of substance abuse.  At the end of his report, Mr. Keough noted plaintiff suffered from a history of polysubstance dependence, which, according to plaintiff, was in remission for three years; Mr. Keough found that statement questionable. Further, plaintiff had a learning disorder NOS, and a personality disorder NOS, with emphasis on borderline and avoidant features.  (Id.)

Plaintiff routinely saw Nikolay Horozov, M.D., a physician at the Family Counseling Center, starting on August 29, 2007.  On September 18, 2007, plaintiff submitted to a psychiatric evaluation conducted by Dr. Horozov.  During the evaluation, plaintiff stated he suffered from a long history of depressed mood, during which he loses interest in daily activities and has low energy, which alternates to periods of high energy where he occasionally goes five or six days without sleep.  Under past psychiatric history, Dr. Horozov noted plaintiff had been hospitalized twice for psychiatric reasons, once at eighteen, and again at twenty-eight, following suicidal ideations after an argument with his ex-wife.  Under past medical history, Dr. Horozov listed obesity, hypertension, chronic back pain, and hypercholesterolemia.[2]  Plaintiff stated he lived with his girlfriend until she kicked him out because, "I didn't want to get a cell phone."  Plaintiff reported extensive past history of recreational substance use.  He had been smoking marijuana between the ages of fourteen and thirty.  He also reported a three-year history of daily crystal methamphetamine use between the ages of nineteen and twenty-two.  He also started using

---

[2] The presence of an abnormally large amount of cholesterol in the blood. Stedman's Medical Dictionary, 918 (28th ed. 2006).

cocaine at the age of seventeen, and occasionally consumed alcohol.  Dr. Horozov noted plaintiff had attentive facial expressions and easily engaged in the interview.  Plaintiff's speech was of normal rate and volume without articulation deficits.  His affect was full range and appropriate to place and situation, and congruent to the conversation topics.  Plaintiff's thought process was linear, to the point, and lacked evidence of psychotic distortions.  His insight and judgment were fair.  Dr. Horozov prescribed Lamictal[3] to replace Depakote,[4] because significant weight gain is caused by Depakote.  (Tr. 237-38, 240.)

On October 18, 2007, plaintiff weighed 312 pounds, and complained of intermittent depressed mood.  He complained about his medication, and had attempted to lose weight without success.  Dr. Horozov continued plaintiff on Abilify[5] and increased his Lamictal dosage.  On November 7, 2007, plaintiff reported improved mood, good sleep and appetite; he weighed 318 pounds.  Dr. Horozov continued plaintiff on Abilify and further increased his Lamictal dosage.  On March 25, 2008, plaintiff weighed 325 pounds, and he stated he felt more depressed lately.  He admitted he had not been taking his medication daily.  Dr. Horozov continued plaintiff's Abilify, and prescribed Cymbalta[6].  On May 7, 2008, plaintiff arrived on time for his appointment, stating his mood had greatly improved with the addition of Cymbalta.  He denied any side effects from the medication.  On July 28, 2008, plaintiff weighed 316 pounds, arrived late for his appointment, and reported that despite his arguments with his girlfriend and the fact they had separated, his mood was relatively stable.  Dr. Horozov determined plaintiff should continue taking Abilify and Cymbalta.  (Tr. 232-36.)

Plaintiff returned to Dr. Horozov on October 14, 2008.  He arrived on time for his appointment, and stated he had separated from his girlfriend and lived with his mother and younger brother, both of whom were on disability for mental illness.  He further stated he had applied for social security for mental illness, and he could not find a physician to refer him to a

---

[3] Lactimal is used to prevent and control seizures or prevent the extreme mood swings of bipolar disorder.   WebMD, http://www.webmd.com/drugs (last visited on November 14, 2012).

[4] Depakote is used to treat seizure disorders and certain psychiatric conditions and to prevent migraine headaches.   WebMD, http://www.webmd.com/drugs (last visited on November 14, 2012).

[5] Abilify is used to treat certain mental or mood disorders and depression.   WebMD, http://www.webmd.com/drugs (last visited on November 14, 2012).

[6] Cymbalta is used to treat depression and anxiety.  WebMD, http://www.webmd.com/drugs (last visited on November 14, 2012).

neurosurgeon due to his obesity.  Dr. Horozov maintained the Abilify dosage, but increased the Cymbalta dosage.  Plaintiff again returned to Dr. Horozov on December 2, 2008.  He weighed 319 pounds, and reported a relatively stable mood.  Dr. Horozov noted plaintiff had no complaints of clinical significance, and denied any side effects from the medication.  Plaintiff's medication regimen remained unchanged.  (Tr. 230-31.)

On February 12, 2009, plaintiff had another appointment with Dr. Horozov.  Plaintiff weighed 322 pounds, reported a relatively stable mood, and had no complaints of clinical significance.  Plaintiff continued to deny any side effects from the medication, and Dr. Horozov encouraged him to start a healthier lifestyle to lose weight.  Plaintiff's medication regimen remained unchanged.  On May 14, 2009, plaintiff met with Dr. Horozov.  Plaintiff weighed 315 pounds, reported relatively stable mood, and had no complaints of clinical significance, though he worried about the results from his disability hearing.  Plaintiff denied any side effects from the medication, or any self-mutilation behaviors.  Plaintiff's medication regimen remained unchanged.  On July 27, 2009, plaintiff stated he felt depressed and his disability claim had been denied.  He denied side effects from medication, but complained of occasional unprovoked anger outbursts.  Dr. Horozov increased plaintiff's Abilify medication and continued Cymbalta.  (Tr. 227-29.)

On August 7, 2009, James Morgan, Ph.D., filled out a Psychiatric Review Technique form.  On this form, Dr. Morgan determined plaintiff's impairments were not severe.  This determination was based on affective disorders and mental retardation.  Dr. Morgan further listed plaintiff as having bipolar disorder, which was in remission, and a learning disorder NOS.  Dr. Morgan also stated plaintiff's thought processes were goal directed, and the content was normal.  Additionally, plaintiff's behavior, speech, and mood were normal.  Dr. Morgan noted plaintiff's condition did not impose significant functional limitations, and found plaintiff's impairments non-severe.  (Tr. 211, 214, 219, 221.)

On November 3, 2009, plaintiff again returned to Dr. Horozov.  Plaintiff stated he had been paranoid lately because he thought people talked behind his back about his weight.  He denied any recent episodes of self-mutilation, and requested a change in his

medication.  Dr. Horozov changed Abilify to Perphenazine,[7] decreased the Cymbalta dosage, and added Wellbutrin[8] SR.  (Tr. 226.)

**Testimony at the Hearing**

A hearing was conducted before an ALJ on October 4, 2011.  (Tr. 36-64.)  Plaintiff testified to the following.  He finished eighth grade, and he believed he failed first, third, and sixth grades.  He did not take special education courses because his mother would not permit it.  He believes he can read a little and do simple math.  He last worked at the Pallet Depot in Marshall, Missouri.  He does not remember how long he had that job or when he left, but he stated that he left because of his back problems and his inability to concentrate on his work.  He has difficulty keeping a job, but he did not know what kept him from holding down a job aside from his mindset.  If he did not have mental issues or back pain he would be able to do physical work.  The primary things that keep him from working are his bipolar and his back conditions.  (Tr. 23-24.)

Plaintiff no longer drives because his license was suspended in January for failure to pay child support.  When he drove prior to the suspension, he sometimes forgot where he was going and always had to have someone in the car with him who knew where they were going.  He could not drive in the city because he could not concentrate on what he was doing, but he can drive in the country or a small town.  Plaintiff currently lives in Hannibal, Missouri, with his fiancé and their son.  They support themselves with his fiancé and son's disability benefits.  He is currently on Medicaid, and he sees Dr. Arment (phonetic) once or twice a month for mental issues.  His therapy consists of just seeing his doctor.  He currently takes Wellbutrin and another medication.  The medications have improved his mental condition a little, but he still cannot control himself, as he will 'go off' and start punching something, or curse uncontrollably.  (Tr. 25-27.)

He suffers from depression, which causes him to not want to get up or do anything.  At times he will just sit there and cry, and he does not want people to be around him.  The last crying spell was the day before the hearing, and he cannot identify the causes.  The crying spells can last hours or days.  He suffers from this level of depression three times a week.  He has had these

---

[7] Perphenazine is used to treat certain mental or mood disorders.  WebMD, http://www.webmd.com/drugs (last visited on November 14, 2012).

[8] Wellbutrin is used to treat depression.  WebMD, http://www.webmd.com/drugs (last visited on November 14, 2012).

problems since he was seventeen.  He took an IQ test two or three years ago.  He thinks about hurting himself all the time and he has cut himself and attempted to cut his heart out once.  He last tried to hurt himself about eight months ago, before he started taking Geodon.  During the last episode, he overdosed and cut his arms.  (Tr. 27-29, 32.)

He cannot explain the problems he has with concentration and he cannot concentrate on anything for long periods of time.  His main problem with having a job is that he gets frustrated when they try to teach him things because he cannot concentrate well enough to understand them, which makes him angry.  He has received x-rays on his back, and though his doctors cannot find anything he has back pain all the time.  He is 5 feet, 11 inches tall and weighs 300 pounds.  To alleviate his back pain he lays down every day for about four hours per day.  Due to the napping, he has trouble sleeping and must take sleeping medication.  He has used illicit drugs in the past, but not within the last five years.  He smokes about a pack of cigarettes per day.  He is trying to cut back, but his nerves will not let him.  (Tr. 29-31.)

He has had problems with the law, and he is about to go on probation due to missed child support payments.  He has no support system, because his mother is now blind and he has not seen his father since he was two years old.  His fiancé cooks and cleans the house.  (Tr. 31-32.)

### III. DECISION OF THE ALJ

On January 21, 2011, the ALJ issued a decision that plaintiff was not disabled.  (Tr. 10-16.)  At Step One of the prescribed regulatory decision-making scheme, the ALJ determined plaintiff had not engaged in substantial gainful activity (SGA) since May 28, 2009.  At Step Two, the ALJ determined plaintiff has the following impairments: obesity, a bipolar disorder controlled by medication, and a remote history of polysubstance dependence, but determined these impairments are not severe within the meaning of 20 C.F.R. §§ 404.1521 and 416.921.  (Tr. 15.)  Because the ALJ determined plaintiff did not suffer from a severe impairment, he was not disabled as defined by the Social Security Act at any time though September 30, 2009, or the date of the decision, the determination ended at Step Two.  Plaintiff does not suffer from a substance use disorder that is uncontrollable or prevents the performance of substantial gainful activity.  (Tr. 15-16.)

In the initial part of his opinion the ALJ stated that plaintiff had applied unsuccessfully for disability benefits under the Social Security Act on four prior occasions.  The ALJ described specifically the most recent, which alleged a period of disability that began on March 15, 2006.  The initial decision denying benefits occurred on June 19, 2007.  (Tr. 37.)  The ALJ assigned to that set of applications denied them on June 1, 2009, after a hearing.  (Id.)  The instant ALJ described evidence that was presented to the earlier ALJ.  The instant ALJ stated the following:

> The undersigned finds no good cause to disturb the decision by Judge O'Blennis [in the earlier case], which became final when the Appeals Council denied [the] request for review on August 12, 2009.  That decision is subject to administrative res judicata.  20 CFR 404.957(c)(1) and 416.1457(c)(1).  The claimant has produced no new and material evidence or other good reason to reopen the prior decision.  Exhibit B1F in the current file, the report from Mr. Keough, is a duplicate of Exhibit 6F, previously considered by Judge O'Blennis.  Exhibit B6F, pp. 10-28 and Exhibit B3F, p. 2 are duplicates of material in Exhibit 13F, also considered by Judge O'Blennis.

(Tr. 12.)

## IV.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Id.  In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision.  Id.  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.  42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942.  A five-step regulatory framework is used to determine whether an individual is disabled.

20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his impairment meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).   If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his past relevant work (PRW).  Id. § 404.1520(a)(4)(iv).   The claimant bears the burden of demonstrating he is no longer able to return to his PRW.  Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy.  Id.; 20 C.F.R. § 404.1520(a)(4)(v).   The sequential analysis can be discontinued at Step Two "when an impairment or combination of impairments would have no more than a minimal effect on the claimant's ability to work."  Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

## V.  DISCUSSION

Plaintiff argues the ALJ erred (1) by incorrectly applying the law and social security regulations when he found that good cause must be demonstrated, and new evidence presented, to reopen plaintiff's prior claim; and (2) by finding plaintiff did not suffer from a severe impairment when that finding is not supported by substantial evidence.

### A.  Administrative Res Judicata

Plaintiff argues the ALJ misapplied the law and social security regulations when he found good cause must be demonstrated, and new evidence presented, in order to reopen plaintiff's prior claim.  The court disagrees.

"A determination, revised determination, decision, or reversed decision may be reopened—(a) within 12 months of the date of the notice of the initial determination, for any reason; [or] (b) within four years of the date of notice of the initial determination if we find good cause, as defined by § 404.989, to reopen the case."  20 C.F.R. § 404.988(a), (b).    The record

indicates that the most recent of plaintiff's prior applications was denied initially on June 19, 2007. The instant applications were filed on June 2, 2009, well outside the 12-month period for reopening the earlier decision "for any reason." However, plaintiff's current applications were filed within the 4-year period following the initial denial of the earlier applications. Therefore, the earlier decision may be reopened for good cause.

Good cause for reopening a prior determination will be found if: "(1) [N]ew and material evidence is furnished; (2) [A] clerical error in the computation or recomputation of benefits was made; or (3) [T]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. § 404.989(a). In the current case, the ALJ carefully considered the decision made by another ALJ in the earlier case and concluded that the earlier decision is subject to res judicata effect. Plaintiff does not meet any of these exceptions; therefore the ALJ properly limited his review to whether or not plaintiff became disabled at any time after May 27, 2009. Furthermore, the current ALJ considered evidence that was received on the earlier applications and determined that plaintiff was not disabled.

## B.  Substantial Evidence

Plaintiff also argues the ALJ's finding that plaintiff did not suffer from a severe impairment is not supported by substantial evidence in the record. It is plaintiff's burden to establish that his impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). Impairments are not severe when they have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, it does not satisfy the requirement of Step Two. Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007). While severity is not an onerous requirement for plaintiff to meet, see Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989), it is also not a toothless standard, and the Commissioner's findings will be sustained upon a determination that the claimant failed to make this showing. Page, 484 F.3d at 1043-44.

Here, there is substantial evidence in the record to support the ALJ's finding that plaintiff did not suffer from a severe impairment. Plaintiff was evaluated by Licensed Psychologist John Keough on May 5, 2007. (Tr. 193-95.) In this meeting, Mr. Keough stated plaintiff's IQ was 70, but because he was not cooperative with the testing, plaintiff's IQ was likely at least borderline

intellectual functioning.  (Tr. 195.)  Further, Mr. Keough noted that plaintiff malingered.  (Tr. 194.)  Mr. Keough did not list plaintiff's IQ as a diagnosis; instead he diagnosed personality disorder, learning disorder, and an history of polysubstance dependence.  (Tr. 195.)  The ALJ found no corroborating evidence of plaintiff's alleged below normal intelligence, because there was only plaintiff's testimony to that effect.  Plaintiff had been seeing Dr. Horozov from August 29, 2007, through July 28, 2008, about once every one or two months while taking Cymbalta and Abilify for a diagnosed bipolar disorder.  During these visits, plaintiff stated there were no side effects from the medication, and he had no complaints of clinical significance.  (Tr. 11-12.)

In addition, there has never been any medical evidence supporting plaintiff's allegation of back pain, and the ALJ found the allegation not credible.  (Tr. 14.)  The record indicates that if plaintiff has hypertension, it is controlled by medication, and there is no evidence of any secondary damage to the eyes, heart, brain or kidneys.  (Id.)  No doctor who has treated or examined plaintiff has stated or implied he is physically disabled or totally or seriously incapacitated, or that he has any significant long-term exertional or other physical limitations or restrictions.  Plaintiff testified he weighed 300 pounds at the hearing, and the record indicated his weight fluctuated between 308-325 pounds, though it never met or exceeded the 328 pounds that designates disability due to obesity for a man of his height.  (Tr. 30, 226-36.)  There was no credible evidence presented to show that plaintiff's obesity, aside from a minor reduction in ordinary mobility and stamina, reduces his overall functional abilities.  Even with the supplemental medical files for July 27, 2009, November 3, 2009 (noting also that plaintiff missed his last scheduled appointment), and January 19, 2010, there is no evidence to show physical impairment. Plaintiff reported being more depressed due to the denial of his disability claim, and alleged some unprovoked anger outbursts, but denied any adverse side effects from the medication.  (Tr. 227.)

Additionally, there is no evidence of substance abuse in recent years.  Plaintiff's depression and bipolar disorder have been well controlled with medication after plaintiff started seeing Dr. Horozov.  (Tr. 227-36.)  Any problems have been minor and short in duration.  (Id.) During the hearing, the ALJ observed no obvious signs of depression, anxiety, memory loss, or other mental disturbance, and therefore determined plaintiff has no credible, medically-

established mental problem or mood disorder that would prevent him from doing any number of ordinary jobs. (Tr. 14.)

The ALJ's determination that plaintiff does not suffer from a severe impairment is supported by substantial evidence in the record.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed under Sentence 4 of 42 U.S.C. § 405(g).  An appropriate Judgment Order is issued herewith.

_____/S/   David D. Noce_____  _____
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 8, 2013.